IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLENNIE FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14cv40-SRW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Glennie Foster ("Plaintiff") brings this action pursuant to 42 U.S.C.§ 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993); *Cornelius v. Sullivan,* 936 F.2d 1143, 1145

(11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Cornelius,* 936 F.2d at 1145. A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).  Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis,* 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius,* 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging that she became disabled on February 8, 2007,[1] due to diabetes mellitus, thyroid problems, heart problems, high blood pressure, and feet and knee swelling.

---

[1]Plaintiff initially alleged an onset date of April 5, 2006, and she was denied relief at the administrative level and before the administrative law judge ("ALJ") and the Appeals Council. (R. 1-70, 470-93). Plaintiff sought relief in this court, and based on the Commissioner's request, the case was remanded on July 6, 2011. (R. 488, 494-98). At the second hearing, held on June 8, 2012, the ALJ allowed Plaintiff to amend the alleged onset date from April 5, 2006, to February 8, 2007. (R. 368, 467).

(R. 119, 122, 146, 186, 368, 467). The administrative law judge ("ALJ") held a hearing on June 8, 2012. (R. 421-69). On August 3, 2012, the ALJ issued a decision, finding that plaintiff was not disabled before April 5, 2011, but that she became disabled beginning on that date by operation of Medical-Vocational Rule 202.04. (R. 412-14).

The ALJ followed the five-step evaluation for determining disability benefits and concluded that Plaintiff had not engaged in substantial gainful activity since February 8, 2007, and that Plaintiff had severe impairments of obesity; moderate periarticular sclerosis and mild degenerative disc disease at L3-4; loss of cervical lordosis with mild kyphosis at C5, lateral osteophyte at C5-6; degenerative changes with spur formation at C5-6; degenerative changes scattered in the facets joints most pronounced on the right at C2-3; history of Moyamoya disease with occlusion of the right middle cerebral artery, without residuals; possible degenerative joint disease of the knees; diabetes mellitus with noncompliance; hypertension with possible noncompliance; history of toxic multinodular goiter status post ablation, now euthryroid (Grave's Disease); arthritis; and status post minimal nondisplaced fracture of the distal fibula with associated soft tissue swelling. 20 C.F.R. § 404.1520(c), § 416.920(c)). (R. 370-71). He concluded at step three that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the listings. (R. 370-71). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work with additional limitations including sit up to two hours without interruption for a total of six hours over the course of an eight-hour

workday; stand up to one hour without interruption for a total of three hours over the course of an eight-hour workday; walk up to one hour without interruption for a total of two hours over the course of an eight-hour workday; frequently use her hands for simple grasping and pushing and pulling of arm controls; frequently reach overhead; continuously use her hands for fine manipulation; frequently use her legs and feet for pushing and pulling leg controls; occasionally stoop and crawl; occasionally climb stairs and ramps; never climb ladders or scaffolds; never crouch, kneel, or balance; never work at unprotected heights; occasionally work around moving machinery; occasionally work in environments exposing her to marked changes in temperature and humidity; occasionally drive automotive equipment; and experience a moderate degree of pain which occasionally interferes with concentration, persistence, and pace, but does not require her to abandon her work or work station; this is not a continuous concept and occurs intermittently. (R. 373, 411-12).

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work during the relevant period. (R. 412). The ALJ found that before April 5, 2011, Plaintiff was an individual closely approaching advanced age and that, on that date, Plaintiff's age category changed to an individual of advanced age. (R. 413). The ALJ determined that Plaintiff has at least a high school education and is able to communicate in English. (R. 413). The ALJ found that transferability of job skills was not material because her past relevant work is unskilled. (R. 413). The ALJ made a step five finding that, prior to April 5, 2011, considering Plaintiff's age, education, work experience, and RFC, there were jobs that

existed in significant numbers in the national economy that she could have performed, including parking lot attendant, bagger, and assembler-production. (R. 413). He concluded that beginning on April 5, 2011, there were no jobs in significant numbers in the national economy that Plaintiff could perform, and that she was disabled beginning on April 5, 2011, pursuant to Medical-Vocational Rule 202.04. (R. 414).

Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council assumed jurisdiction and issued a decision in which it agreed with the ALJ's determination that Plaintiff "has the residual functional capacity to perform a reduced range of the light exertional level." (R. 339). The Appeals Council disagreed with the ALJ's determination that Plaintiff was not disabled beginning February 9, 2011, when she reached the age of 55. (R. 339). It considered the testimony of the vocational expert ("VE") along with Medical-Vocational Guidelines ("grid rules") 202.04 and 202.13. (R. 337-38); *see* 20 C.F.R. pt. 404, subpt. P, app. 2. It ruled that the VE's testimony and grid rule 202.13 directed a conclusion that Plaintiff was not disabled before she reached age 55 on February 9, 2011. (R. 337-39). It went on to rule, however, that when Plaintiff attained age 55, on February 9, 2011, she was considered of advanced age, and grid rule 202.04 directed a conclusion of disabled. (R. 339). Plaintiff then filed the present action seeking review of the Commissioner's final decision. (Doc. No. 1).

## DISCUSSION

Plaintiff raises the following issue: "Does substantial evidence support the ALJ's RFC

assessment for a restricted range of light exertional work activity, based on a testifying medical expert opinion who was instructed by the ALJ, not to consider the treating physician chart notes and functional opinion?" (Doc. No. 14, at 8). Plaintiff argues that the ALJ erred in rejecting Dr. Goldstein's initial opinion that Plaintiff could perform only sedentary work in favor of Dr. Goldstein's second opinion that Plaintiff could perform a limited range of light work, after the ALJ instructed Dr. Goldstein "not to consider Dr. Golomb's notes and functional opinion when advising the court as to Ms. Foster's maximum functional ability."(Doc. No. 14, at 8) (footnote omitted). The undersigned concludes that Plaintiff's argument fails because it rests on an erroneous interpretation of the ALJ's instruction to the medical expert and, further, that – even *assuming* that the ALJ instructed the expert to ignore Exhibits 24F and 25F entirely, as Plaintiff contends – any error in this regard is harmless.

At the hearing, the ALJ heard testimony from the medical expert, Allan R. Goldstein, M.D., who reviewed Plaintiff's medical records. (R. 439). Dr. Goldstein is a specialist in both pulmonary and internal medicine. (R. 554). Dr. Goldstein testified that he could not find a medical basis for several diagnoses made by Philip N. Golomb, M.D., Plaintiff's treating physician, including diabetic neuropathy (R. 441, 451); vertigo that was identified in 2007 but not in evaluations and consultative exams in 2010 (R. 441); bilateral knee pain (R. 446); and swelling of her feet (R. 446). The ALJ asked Dr. Goldstein if Plaintiff's "impairments [would] be expected to result in any limitation in her ability to function in a work setting," and Dr. Goldstein replied, "Other than the comments from Dr. [Golomb], no." (R. 442)

(alteration added). Dr. Goldstein initially testified that Plaintiff could perform a range of sedentary work, and he testified that he arrived at the conclusion based on Dr. Golomb's diagnoses concerning Plaintiff, though Dr. Goldstein was "not sure how Dr. [Golomb] has come up with his information." (R. 443-46)(alteration added). In making the recommendation regarding sedentary work, Dr. Goldstein said that he did not ignore Dr. Golomb's assessment because, "if I ignore it then I'm saying that what [Dr. Golomb] is saying is untruthful." (R. 446). Dr. Goldstein stated that if he "did not include [Dr. Golomb's assessment] then he [Dr. Goldstein] would not have been paying attention to all of the records that have been submitted." (R. 450) (alteration added). But, Dr. Goldstein added, Dr. Golomb's "findings are totally different than any of the other findings." (R. 450). Dr. Goldstein "did not find in [Dr. Golomb's medical] records the degree of impairment that Dr. [Golomb] has in [Exhibits 24F and 25F, R. 1049-1128]."(R. 450) (alteration added). Dr. Goldstein did not question the history that Dr. Golomb took from Plaintiff, but Dr. Goldstein could not find objective evidence to support the assessments. (R. 451).

The ALJ then asked Dr. Goldstein for his opinion regarding Plaintiff's ability to function in a work setting "[i]n light of your testimony questioning Dr. [Golomb's] assessment at Exhibits 24 and 25F, if we factor out Exhibits 24 and 25F and deal with all the other medical evidence in the file . . . [i]ncluding his treatment notes." (R. 446-47). When Dr. Goldstein did not take into account Dr. Golomb's unsupported assessments, Dr. Goldstein's medical opinion was that Plaintiff could perform a range of light work, not

sedentary work. (R. 446-49). The ALJ gave Dr. Goldstein's opinion substantial weight. (R. 409).

Plaintiff's argument is without merit. First, the ALJ did not instruct the medical expert to ignore the treatment notes. Instead, the ALJ instructed Dr. Goldstein to factor out the assessments in Exhibits 24F and 25F that Dr. Goldstein questioned, and to "deal with all the other medical evidence in the file . . . *[i]ncluding his treatment notes.*" (R. 446-47) (emphasis added). Second, even if the ALJ had instructed the medical expert to ignore Exhibits 24F and 25F entirely, any error would be harmless. *Cf. Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (finding ALJ error is harmless when it does not impact the determination of disability). The ALJ did not instruct the medical expert to ignore all of Dr. Golomb's other treatment notes of record, and Exhibit 14F includes substantially all[2] of Dr. Golomb's treatment records that are also in Exhibit 24F. (R. 711-806, 1049-1124). In addition, on cross-examination, Dr. Goldstein reiterated that he "consider[ed] all of them," referring to those physicians who reviewed her chart and those who actually examined her, including Dr. Golomb. (R. 452). Contrary to Plaintiff's argument,[3] the ALJ did not direct Dr. Goldstein "to

_____

[2]Although the pages are not presented in the same order within the two exhibits, the 75-page treatment record in Exhibit 24F is also included in Exhibit 14F, with the exception of three pages. (R. 1050-52). These three pages bear dates from April 23, 2012, to April 26, 2012 – more than a year after plaintiff turned 55 and became disabled – and include the treatment notes from an office visit and prescription information.

[3]Plaintiff presents no direct challenge the ALJ's determination to give only little weight to Dr. Golomb's opinion. (R. 410). In any event, the Commissioner had good cause, supported by substantial evidence, not to give substantial weight to the treating physician's opinion. *See* ALJ's statement of his reasons at R. 410-11 and his preceding analysis of the medical evidence at R. 398-

take a blind-eye to some of the medical evidence and then render a medical opinion based on a blind reading of the evidence." (Doc. No. 14, at 9). Instead, Dr. Goldstein rendered an opinion in line with the substantial evidence in the medical record as a whole. (R. 446).

## CONCLUSION

Upon review of the record as a whole, the court concludes that the Commissioner's final decision is supported by substantial evidence and a proper application of the law. Accordingly, the decision of the Commissioner is AFFIRMED. A separate judgment will be entered.

DONE, this 3rd day of September, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

408; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'") (citation omitted); *id.* ("Good cause exists 'when the (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).